SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5256

September 13, 2018

Brian S. Eng, Esquire
Community Legal Aid Society, Inc.
840 Walker Road
Dover, DE 19904

Michael P. Morton, Esquire
Nicole M. Faries, Esquire
David C. Zerbato, Esquire
Michael P. Morton, P.A.
3704 Kennett Pike, Suite 200
Greenville, DE 19807

RE: *Sandhill Acres Home Owners Association v. Sandhill Acres MHC, LLC*
**C.A. No: S17A-08-001**

Dear Counsel:

This is my decision on Appellant Sandhill Acres Home Owners Association's

("SAHOA") appeal of Arbitrator James P. Sharp's decision that Appellee Sandhill

Acres MHC, LLC ("Sandhill Acres") is entitled to increase its monthly lot rent to the

market rate of $455 per lot because Sandhill Acres spent $12,185 to improve the

water filtration system for the Sandhill Acres Manufactured Home Community.

Sandhill Acres is the owner of the 128 lot Sandhill Acres Manufactured Home

Community located in Sussex County, Delaware. The community is subject to the

Rent Justification Act (the "Act").[1] In communities like Sandhill Acres, the residents

purchase their homes but rent the land on which their homes sit. SAHOA is the

---

[1] 25 *Del.C.* §§ 7040-7046.

homeowners association representing the 16 residents opposed to the proposed rent increase.

Sandhill Acres sought to increase its monthly lot rent to the market rate of $455 per lot per month as established in a market rent survey. This increase would represent an increase above the rate of inflation. Sandhill Acres sent out notices of the rent increase and held meetings with the residents. At the meetings, Sandhill Acres presented the market rent survey. Sandhill Acres also disclosed that it spent $12,185 to upgrade the water filtration system in the community. SAHOA did not agree to the rent increase and filed for arbitration. An arbitration hearing was held on May 23, 2017. The Arbitrator ruled that Sandhill Acres was entitled to increase its monthly lot rent to the current market rate of $455 per month because Sandhill Acres had spent $12,185 to upgrade the water filtration system. SAHOA now appeals that decision to this Court.

## STANDARD OF REVIEW

"The Delaware Supreme Court strongly signaled that the scope of review by the Superior Court in appeals pursuant to the Act requires a substantial evidence and error of law review as opposed to a *de novo* consideration of the record."[2] The

---

[2] *Bon Ayre Land, LLC, v. Bon Ayre Community Association.* 2016 WL 7036580, at *2 (Del. Super. Dec. 2, 2016).

2

Delaware Supreme Court noted that the "appeal provision provides that any review by the Superior Court will be "on the record and the Court shall address written and/or oral arguments of the parties as to whether the record created in the arbitration is sufficient justification under the Code for the community owner's proposed rental increase in excess of the CPI-U. That usage, although loose, is associated with the kind of review that is given to determinations by administrative agencies. Under that form of review, if a factual finding of the initial tribunal is supported by substantial evidence, that finding must be given deference."""[3]

## The Applicable Statutory Law

Sandhill Acres seeks to increase the lot rent in its community by more than the consumer price index. The Rent Justification Act allows a manufactured home community landowner to increase the lot rent by the rate of inflation without showing more.[4] However, to raise the lot rent by more than inflation, the Act sets forth three conditions a landowner must satisfy.[5] The first condition a landowner must satisfy is a clean bill of health during the preceding 12-month period.[6] There is no allegation

---

[3] *Bon Ayre Land, LLC, v. Bon Ayre Community Association,* 133 A.3d 559, at fn. 11 (Del. Feb. 25, 2016)(Table).

[4] 25 *Del.C.* § 7042(a).

[5] 25 Del.C. § 7042(a)(1).

[6] *Id.*

3

that Sandhill Acres did not meet this obligation. The landowner must then show that the "proposed rent increase is directly related to operating, maintaining or improving the manufactured home community, and justified by 1 or more factors listed under subsection (c) of [§7042]."[7] Sandhill Acres argues that the proposed rent increase is based upon installing an improved water filtration system and is directly related to improving the community. Subsection (c) lists eight factors.[8] The one at issue here is market rent.[9] Market rent is defined as "that rent which would result from market forces absent an unequal bargaining position between the community owner and the home owners..."[10] The first six factors relate to capital improvements and changes in taxes, utility charges, insurance and financing costs, reasonable operating and maintenance expenses, and repairs other than for ordinary wear and tear. As such, the first six relate to the cost side of operating, maintaining or improving a mobile home park. The seventh factor is market rent and it too must relate to operating, maintaining or improving a manufactured home park. The eighth factor involves rental assistance provided by the community owner to the residents.

---

[7] 25 *Del.C.* § 7042(a)(2).

[8] 25 *Del.C.* § 7042(c)(1)-(8).

[9] 25 *Del.C.* § 7042(c)(7).

[10] *Id.*

4

## The Arbitration Hearing

The Delaware Manufactured Home Rehabilitation Authority appointed James P. Sharp, Esquire, to serve as the Arbitrator. The Arbitration hearing was held on May 23, 2017. The following five witnesses testified at the arbitration hearing:

1. ## Gary Creppon

   Creppon has worked at Sandhill Acres for 28 years. Creppon is now the property manager for Sandhill Acres. Creppon described the water system at Sandhill Acres.

2. ## Bob Ruais

   Ruais is the Director of Operations for Arcap, LLC, the management company for Sandhill Acres. Ruais testified (1) about the water filtration system cost and the increase in others costs; (2) that the market rent is $455 per lot; (3) that costs were going up and the return on the property had declined; (4) that the sewer costs and other operating expenses had gone up; (5) that the improved water filtration system cost $12,185; and (6) that the water and sewer costs were up $83 per lot and net operating earnings were down $57 per lot.

3. ## Royce Ashton Rowles

   Rowles works for Colliers International as a commercial real estate appraiser. Rowles testified that market rent is $455 per lot.

4. Robert Ray

Ray has been a tenant in Sandhill Acres for 26 years. Ray testified about the conditions in Sandhill Acres.

5. Charles Dodge

Dodge is a tenant in Sandhill Acres. Dodge testified about the conditions in Sandhill Acres.

At the arbitration hearing, Sandhill Acres relied on the $12,185 cost of the improved water filtration system as proof that the proposed increase to market rent was directly related to operating, maintaining or improving the community as required by 25 *Del.C.* § 7042(a)(2). The cost of the improved water filtration system divided between all of the residents in Sandhill Acres equaled $7.93 per lot per month. Although there was some testimony about an increase in other expenses since the beginning of 2012, nothing was provided in writing about those expenses at the meetings with residents or at the arbitration hearing. Therefore, the only expense received into evidence and provided to SAHOA in writing was for the water filtration system.

## The Arbitrator's Decision

There were three issues at the arbitration hearing:

1. Whether the rent increases were related to operating, maintaining or

6

improving the manufactured home commonly.

2. Whether the market rent justified the rent increases, and

3. Whether the required information was provided at the community meetings.

1. **Whether the rent increases were related to operating, maintaining or improving the manufactured home community.**

The Arbitrator concluded that the $12,185 cost to improve the community's water filtration decision was related to improving the community, reasoning that the community had experienced problems with the water and that the improved water filtration system addressed those problem and thus benefitted the community. The Arbitrator further decided, based on one of the Supreme Court's statements in *Bon Ayre II*, that "[i]f a landowner invests in its development, and therefore has improved the 'community,' it can also reap the reward from that investment through higher than inflation rent increases," that Sandhill Acres could raise its rent to market rent, not just the rent that would cover the cost of the improved water filtration system.

2. **Whether the market rent justified the rent increases.**

The Arbitrator decided that the market rent survey prepared by Rowles was properly done and, as such, established that the monthly market rent was $455 per lot.

3. **Whether the required information was provided at the community meetings.**

The Arbitrator found that since both the Rowles report and invoice for the cost

7

of the improved water filtration system were disclosed to the residents at the meetings that the Act's disclosure requirements were satisfied. The Arbitrator, in reaching his decision, did not rely on Ruais' generalized testimony regarding increases in various costs and the decline in net operating income for Sandhill Acres. Moreover, those items were not disclosed to the residents at the meetings.

### *Bon Ayre II*

The sole issue on appeal is whether the expenditure by Sandhill Acres of $12,185 for the improved water filtration system is sufficient to allow it to charge its existing residents market rent of $455 per lot.[11] What a community owner must establish in order to charge its existing residents market rent was addressed by the Supreme Court in *Bon Ayre II*.[12] In *Bon Ayre II*, the community owner sought to justify a rent increase based on market rent alone. The Superior Court rejected that rationale and the Supreme Court affirmed the Superior Court's decision. In doing so, the Supreme Court examined the language, purpose and structure of the Act and addressed how a community owner could justify an increase to market rent for its existing residents. The Supreme Court noted that the relationship between a

---

[11] The lack of disclosure at the required meetings with the residents about what Ruais would testify to at the arbitration hearing regarding increases in various costs and the decline in the net operating income for Sandhill Acres is not an issue on appeal because the Arbitrator did not rely on those matters to reach his decision.

[12] 149 A.3d 227 (Del. 2016).

8

community owner and its residents placed a disproportionate amount of power in the community owner's hands in establishing rental rates because a resident could not easily or cheaply move his home from one community to another. The Supreme Court also noted that the Act protects residents by preserving the initial relationship between them and their community owner by limiting the manner in which a community owner can raise the existing residents' rent. The Supreme Court further noted that in order for a community owner to raise its rent for existing residents above the consumer price index the community owner must show that its costs have increased. This is all reflected in the following statements by the Supreme Court:

> The market rent factor appears seventh in § 7042(c)'s list of factors and is categorically distinct from the other factors in that it is not measured solely by tangible costs inside the community but rather by external "market forces." But, the language, purpose, and structure of the Rent Justification Act require more than just that factor for a landowner to raise rent above CPI-U.[13]

\*\*\*\*\*\*\*\*\*\*\*

> The Act protects homeowners by preserving the initial relationship between themselves and the landowners, which presumably takes into account the landowners' costs and expected profits, unless the landowners' circumstances change in specific ways. To take into account ordinary inflation, the Act allows a landowner to raise rent by the average annual increase of CPI-U. To impose an increase beyond CPI-U, the landowner must prove more. In particular, it must show that the increase is "directly related to the operating, maintaining or

---

[13] *Id.* at 234.

9

improving the manufactured home community." That is the landowner must show that its original expected return has declined, because the cost side of its ledger has grown. If a landowner can show that its costs have gone up, that opens the door to a rent increase based on §7042(c)'s factors, including market rent. If a landowner invests in its development, and therefore has "improv[ed]" the community, it can also reap the reward from that investment through higher than-inflation rent increases. But, unless the landowner has seen its costs increase for "operating, maintaining or improving the manufactured home community," the Rent Justification Act preserves the initial relationship the landowner creates between its revenue and its costs."[14] (Emphasis added.)

\*\*\*\*\*\*\*\*\*\*\*

But there is nothing illogical about the General Assembly's determination that if a landowner is to raise rates for homeowners above the rate of inflation, a landowner must show some increase in the costs on its income statement. This statutory requirement is a modest one.[15]

\*\*\*\*\*\*\*\*\*\*\*

Taken together, these statements show that the Supreme Court requires a community owner to show that its costs have increased in order to justify an increase to market rent for its existing tenants. It is not merely enough for a community owner to show that it has incurred some costs. The community owner must show that its costs have increased. Indeed, in the portions of the *Bon Ayre II* decision that I have quoted, the Supreme Court four times stated, in one way or another, that the

_____

[14] *Id.* at 234-235.

[15] *Id.* at 235.

10

community owner must show that its costs have increased.[16]

The Supreme Court made clear its ruling on this issue again in *Donovan*,[17] stating:

> In *Bon Ayre Land, LLC v. Bon Ayre Community Association*, we made clear that "the landowner must show that its original expected return has declined, <u>because the costs side of its ledger has grown</u>. If a landowner can <u>show that its costs have gone up</u>, that opens the door to a rent increase based on § 7042(c)'s factors, including market rent."[18]

**\*\*\*\*\*\*\*\*\*\***

I find that the Arbitrator's decision that Sandhill Acres was entitled to an increase to market rent for its existing residents is not in accordance with the applicable law or based upon substantial evidence in the record because Sandhill Acres did not establish that its costs increased in such a manner that caused its original expected return to decline. The Arbitrator relied on the following statement in *Bon Ayre II* to support his decision:

> If a landowner invests in its development, and therefore has improved "improv[ed]" the community, it can also reap the reward from

---

[16] (1) "...because the cost side of the ledger has grown." (2) "If a landowner can show that its costs have gone up." (3) "But, unless the landowner has seen its costs increase." and (4) "a landowner must show some increase in the costs on its income statement." (Citations omitted).

[17] *Donovan Smith HOA v. Donovan Smith MHP*, 2018 WL 3360585 (Del. July 10, 2018).

[18] *Id.* at \*1.

11

that investment through higher than inflation rent increases."[19]

The Arbitrator used this isolated statement to reason that a mere investment, regardless of the amount, by the community owner can form the basis for an increase to market rent. However, this is an incomplete statement on the issue. The Supreme Court added the following right after this statement:

> But, unless the landowner has seen its <u>costs increase for "operating, maintaining or improving the manufactured home community</u>," the Rent Justification Act preserves the initial relationship the landowner creates between its reserves and costs.[20]

The Supreme Court in *Bon Ayre II* recognized that a community owner incurs costs each year in operating, maintaining or improving a manufactured home community. The Supreme Court also recognized that a community owner's costs and expected profits are used to establish the initial relationship between a community owner and its existing residents. To alter that relationship and raise the rent above the consumer price index, the Supreme Court has made it clear that the community owner's costs must increase in such a manner that has caused its original expected return to decline. Otherwise, the Act preserves the initial relationship between the community owner and its existing residents.

---

[19] *Bon Ayre Land, LLC*, 149 A.3d at 234.

[20] *Id.* at 234-235.

12

Sandhill Acres only established that it spent $12,185 to improve the water filtration system. Sandhill Acres did not establish that this was an increase in its costs. Sandhill Acres also did not establish that because of this expenditure its original expected return has declined. In order for Sandhill to justify an increase to market rent for its existing tenants it would have had to offer evidence about its original costs and original expected return and how the expenditure of $12,185 altered that relationship. I would expect, as the Supreme Court also expected, that a community owner incurs costs each year in order to operate, maintain or improve a mobile home community. That is not enough. A community owner must show an increase in its costs such that its expected return has declined in order to move to market rent for its existing residents. Sandhill Acres did not show that.

## CONCLUSION

The Arbitrator's decision is REVERSED.

**IT IS SO ORDERED**.

Very truly yours,

E. Scott Bradley

ESB/sal
cc:    Prothonotary

13